UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DAREN BOWDEN, | ) | |
| | ) | |
| Petitioner, | ) | 1:11-cr-00132-JAW |
| | ) | 1:13-cv-00312-JAW |
| v. | ) | |
| | ) | 1:11-cr-00235-JAW |
| | ) | 1:13-cv-00313-JAW |
| UNITED STATES, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this matter, Petitioner Daren Bowden moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct the sentences imposed after he pled guilty to (1) conspiracy to possess with intent to distribute oxycodone, and (2) possession of a firearm by an unlawful user of controlled substances. (Motion ECF Nos. 87, 88.)[1] Petitioner claims ineffective assistance of counsel on several grounds, principally regarding issues related to the drug quantity. The Government has moved for summary dismissal. After a review of Petitioner's motion and the Government's request for dismissal, the recommendation is that the Court grant the Government's request, and dismiss Petitioner's motion.[2]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was arrested on August 5, 2011, for conspiring to distribute and possess with intent to distribute crack cocaine; counsel was appointed at Petitioner's initial appearance on

---

[1] Petitioner's convictions were docketed as separate cases. The drug trafficking case is at 1:11-cr-00132-JAW-1; the firearms case is at 1:11-cr-00235-JAW-1. Unless otherwise indicated, this recommended decision cites to the docket in the drug trafficking case. References to specific pages in Petitioner's motion are to ECF No. 88 unless otherwise indicated.

[2] Petitioner did not file a reply.

August 8, 2011.  (ECF No. 9.)  Petitioner was indicted on August 17, 2011, on a single count alleging that from January 1, 2009, to March 1, 2010, Petitioner conspired to distribute and to possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 846, 841(a)(1). (Indictment, ECF No. 14.)

The amended prosecution version alleged as follows: Through drug deals arranged with his source and his customers, Petitioner distributed pills throughout Piscataquis County. (Amended Prosecution Version, ECF No. 38 at 1.)  In March 2009, Petitioner pawned a shotgun to another person to support his addiction to oxycodone.  (*Id.*)  Had the case gone to trial, the Government's evidence would have consisted of the testimony of law enforcement officers and agents to whom Petitioner confessed during two interviews; the testimony of a cooperating defendant who was one of Petitioner's customers; telephone and business records; and the testimony of an interstate nexus expert with the Bureau of Alcohol, Tobacco, Firearms, and Explosives to establish that the firearm moved in interstate commerce.  (*Id.* at 1-2.)  In the first of the two interviews with agents, which interview took place in April 2010, Petitioner stated that he obtained ten pills each day from his source and used about three or four himself.  (Sentencing Exh., ECF No. 104-1 at 4; Sentencing Tr., ECF No. 83 at 34, Sentencing Exhibit List, ECF No. 56 at 1.) In the second interview, which occurred in May 2011, Petitioner said that he acquired ten or twenty pills each day.  (Sentencing Exh., ECF No. 104-2 at 3.)

On December 28, 2011, the Government filed an information under docket number 1:11-cr-00235-JAW, alleging the firearms charge, i.e., that Petitioner was an illegal user of or addicted to a controlled substance and knowingly possessed a shotgun in violation of 18 U.S.C. § 922(g)(3).

On the same date, the parties filed a plea agreement stating that Petitioner agreed to plead guilty to both the firearms charge and the drug trafficking charge. (Plea Agreement, ECF No. 35.)[3] Also on December 28, 2011, the Court held a hearing at which counsel was appointed on the firearms charge; Petitioner waived the indictment on the firearms charge and was arraigned; and, pursuant to Fed. R. Crim. P. 11, Petitioner entered a guilty plea on both the drug trafficking charge and the firearms charge. (Fed. R. Crim. P. 11 (Rule 11) Tr., ECF No. 81 at 14-16.) Based on its colloquy with Petitioner, the Court found that Petitioner was fully informed of his rights and that his decision to waive the indictment and plead guilty to both charges was knowing and voluntary. (*Id.* at 13, 29-30.)[4]

The revised presentence investigation report included a conservative calculation of the drug quantity. Petitioner had reported that he bought or sold at least ten 80-mg oxycodone pills each day from March 1, 2009, through March 1, 2010, resulting in a purchase of a total of 3,650 pills. However, based on a confidential source who stated that Petitioner also sold 30-mg pills, probation assumed that half of the pills were 80-mg pills (3,650/2 x 80-mg = 146 grams) and half were 30-mg pills (3,650/2 x 30-mg = 54.75 grams), for a total quantity of 200.75 grams (146 + 54.75 =

---

[3] The plea agreement stated that Petitioner understood that the maximum prison term would be twenty years on the drug trafficking charge and ten years on the firearms charge. (Plea Agreement, ECF No. 35 at 1-2.) The parties agreed to recommend that the Court find that Petitioner accepted responsibility for the offenses and that he therefore receive a three-point reduction, pursuant to U.S.S.G. § 3E1.1. (*Id.* at 2.) Petitioner acknowledged that he could not withdraw his guilty plea if the Court did not accept the recommendation. (*Id.* at 3.) Petitioner agreed to waive his right to appeal any sentence that did not exceed 120 months. (*Id.*) He also agreed to waive any rights he may have had under the Speedy Trial Act, 18 U.S.C. § 3161-64, for the period from the execution of the plea agreement through the date on which sentence was imposed. (*Id.* at 4.)

[4] The Court found that Petitioner was competent to enter a plea; that Petitioner had had a fair opportunity to discuss the charges with counsel; that, based on the amended Government's version of the offenses, Petitioner's attorney's responses, and Petitioner's responses, there was a factual basis for the plea; that Petitioner understood his right to a trial, and understood the maximum and minimum punishments for each of the charges; and that Petitioner acted voluntarily and knowingly in tendering his guilty pleas. (Fed. R. Crim. P. 11 (Rule 11) Tr. at 4, 10, 23, 29-30.) Of particular relevance to Petitioner's section 2255 claims, when the Court asked Petitioner whether anyone had promised him that the prosecutor would recommend a sentence other than what was set forth in the plea agreement, he responded, "No, sir." (*Id.* at 29.)

200.75) of oxycodone. This was converted to 1,345 kg of marijuana equivalent, resulting in a base offense level of 32.[5] Two levels were added, pursuant to U.S.S.G. §2D1.1(b)(1), for trading firearms for drugs on multiple occasions, and three levels were subtracted, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility, resulting in a total offense level of 31. The presentence investigation report placed Petitioner's criminal history category at III, based on six criminal history points. (Sentencing Tr., ECF No. 83 at 78.) In the report, probation concluded that the sentencing guideline range was between 135 and 168 months of imprisonment. (*Id.*)

Petitioner objected to the revised presentence investigation report regarding both the drug quantity and the criminal history category. First, Petitioner objected to the reliability of information provided by a confidential source regarding drug quantity, and asserted that the quantity was not more than 600 pills, in part because Petitioner was employed out-of-state from September through December 2009 and in part because at times fewer drugs than alleged were involved. Second, Petitioner objected to the firearms enhancement because he sold to a licensed firearms dealer. Finally, Petitioner objected to "the assignment of criminal history points to [a conviction referenced in paragraph 37 of the report] as he has moved to reopen the deferred disposition based on procedural grounds, but the case has not been concluded at this time."

The Court held two days of sentencing hearings in July and August 2012. (Sentencing Tr., ECF Nos. 82, 83.) At the hearings, the parties again disputed both the number of pills that Petitioner possessed each day and the number of days on which he possessed pills.[6] The Court

---

[5] "The sentencing guidelines provide a formula for converting drugs into equivalent units of marijuana for sentencing purposes." *United States v. Mills,* 710 F.3d 5, 9 (1st Cir.2013); *see* U .S.S.G. § 2D1.1 cmt. n. 10(E) (2009) (since recodified as cmt. n. 8(D) (2012). The Probation Office applied the 2011 edition of the sentencing guidelines manual, which provides that for purposes of determining the base offense level, one gram of oxycodone equates to 6,700 grams of marijuana. *See* U.S.S.C. § 2D1.1. Hence, 200.75 grams of oxycodone equates to 1,345 kilograms of marijuana (200.75 x 6,700 = 1,345,025 grams or 1,345 kilograms).

[6] At the sentencing hearing, the Government conceded that 65 days of possession could be removed from the calculation, resulting in 1,105.5 kilograms of marijuana equivalent (300 days x 10 pills each day = 3,000 pills, of

4

noted that Petitioner was in an "awkward position" because he was trying to convince the Court that the number of pills that he possessed each day was much lower than the amounts to which he had confessed in April 2010 and May 2011.  (Sentencing Tr., ECF No. 83 at 82.)  In support of his position at sentencing, Petitioner offered the testimony of a private investigator who had conducted a telephone interview of Michael Weston, who had worked for Petitioner from September to December 2009 at a cable company in Vermont.[7]  The private investigator testified that Weston told him that Petitioner told Weston that Petitioner possessed ten pills each week rather than ten each day, and that the drugs were mostly for Petitioner's personal consumption.  (Sentencing Tr., ECF No. 83 at 36-39.)

The Court found that Petitioner's own statements regarding the drug quantity provided the Court with the most reliable drug quantity estimate.  The Court based its conclusion on (1) the fact that Petitioner gave his statements to law enforcement, whereas Weston spoke with a private investigator; (2) Petitioner gave two statements, whereas Weston gave only one; (3) Petitioner's statements were closer to the pertinent dates, whereas Weston gave his statements a couple of years later; (4) Petitioner's two statements were consistent as to the drug quantity, even though the two interviews were separated by over a year.  (*Id.* at 83-84.)  The Court thus found that Petitioner possessed ten pills each day for the days on which he engaged in drug trafficking.  (*Id.* at 84.)

---

which half were 80-mg and half were 30-mg; 3,000/2 x 80-mg = 120 grams; 3,000/2 x 30-mg = 45 grams; 120 + 45 = 165 grams of oxycodone; 165 x 6,700 = 1,105.5 kilograms of marijuana equivalent).  The revised amount still yielded a base offense level of 32.  Petitioner's drug quantity argument at sentencing was presented in Exhibit 16, which was described as a "guideline" that showed an estimated drug quantity based on the varying number of pills sold over the course of the year at issue.  Exhibit 16 presented a total of about 900 tablets equaling just under 50 grams of oxycodone, which would equate to about 332 kilograms of marijuana equivalent and a base offense level of 26. (Sentencing Tr., ECF No. 83 at 76-77; Exhibit, ECF No. 104-3 at 7.)

[7] Weston had received a target letter and faced possible criminal prosecution.  He did not testify at Petitioner's sentencing, having invoked the Fifth Amendment privilege against self-incrimination.  (Sentencing Tr., ECF No. 82 at 30, 37.)

With respect to Petitioner's challenge to the number of days on which Petitioner possessed oxycodone, the Government conceded that Petitioner worked in Vermont for 37 days during the fall of 2009, and that Petitioner did not possess oxycodone for 28 days in February; therefore, the 365 days alleged in the revised presentencing report could be reduced by 65 days (37 + 28 = 65). (Sentencing Tr., ECF No. 83 at 11, 17-18.) Petitioner argued that he was in Vermont for a much longer period, from September 1, 2009, to December 22, 2009. (Sentencing Tr., ECF No. 83 at 10, 84.)

The Court found that Petitioner worked in Vermont from October 10, 2009, to December 22, 2009, *i.e.*, a period of 73 days. (Sentencing Tr., ECF No. 83 at 84-85.) The Court also determined, based on telephone records, that when Petitioner was based in Vermont, he was actually in Maine for many more days than necessary to put the drug quantity of oxycodone well over 1,000 kilograms of marijuana equivalent. (Sentencing Tr., ECF No. 83 at 86-87.)[8] The Court concluded on that basis that Petitioner's base offense level was 32. (Sentencing Tr., ECF No. 83 at 87.)

---

[8] The Court calculated the total drug quantity, and from it, the base offense level, as follows: Working from the revised presentencing investigation report figures, the Court determined that Petitioner was alleged to be responsible for 3.685 kilograms of marijuana equivalent each day for one year (1,345 kg total, divided by 365 days = 3.685 kg marijuana equivalent each day). To calculate the amount for which Petitioner would not be responsible because he was out-of-state and lacked access to his supplier, i.e., the amount that would be subtracted from the total of 1,345 kilograms of marijuana equivalent, the Court multiplied 3.685 by the 73 days that the Court found Petitioner's employment was based in Vermont (3.685 kg x 73 days = 269.005 kg), and added to that the amount represented by the 28 days in February 2010 during which Petitioner was in methadone treatment (3.685 kg x 28 days = 103.18 kg), for a total of 372.185 kilograms of marijuana equivalent (269.005 kg + 103.18 kg = 372.185 kg). The Court subtracted from the revised presentence investigation report total of 1,345 kilograms the 372.185 kilograms for which Petitioner was not to be held responsible (1,345 kg − 372.185 kg = 972.815 kg). The Court then determined that the difference between the total of 972.815 kg and the 1,000 kg or more that would raise Petitioner from a base offense level of 31 to a base level of 32 was 27.185 kg (1,000 − 972.815 = 27.185). The Court concluded that at the quantities Petitioner possessed, 27.185 kg of marijuana equivalent would be reached through eight days of oxycodone processing. Finally, the Court scrutinized the telephone records for the period from October 10, 2009, to December 22, 2009, and found that Petitioner had actually spent many more than eight days in Maine during that period. On that basis, the Court found that Petitioner had possessed more than 1,000 but less than 3,000 kilograms of marijuana equivalent, and therefore the base offense level was 32. (Sentencing Tr., ECF No. 83 at 85-87.)

The Court determined the total offense level as follows: Because Petitioner pawned the guns to get cash with which to buy drugs, the Court found a causal connection between the pawned guns and the illicit drugs. (Sentencing Tr., ECF No. 83 at 5-7.) On that basis, the Court applied a two-level sentencing enhancement to the base offense level, pursuant to section 2D1.1(b) of the United States Sentencing Guidelines. (Sentencing Tr., ECF No. 82 at 18, 21.) The Court also applied a three-point reduction for acceptance of responsibility, pursuant to section 3E1.1 of the sentencing guidelines. (Sentencing Tr., ECF No. 83 at 87.)

The Court asked Petitioner specifically whether he had had a chance to review the criminal history portion of the revised presentencing report, and Petitioner responded that he had reviewed it carefully and that the criminal history portion was accurate. (Sentencing Tr., ECF No. 82 at 4-5.) The Court determined that the reopening of a deferred disposition in state court, on a charge of operating after suspension for a habitual offender, would have no effect on Petitioner's criminal history category for purposes of federal sentencing, because regardless of whether the reopened sentence counted toward Petitioner's prior convictions, he would remain in criminal history category III. (Sentencing Tr., ECF No. 82 at 21-23.)[9] The Court concluded that a total offense level of 31 and a criminal history category of III produced a sentencing guideline range of 135 to 168 months of imprisonment. (Sentencing Tr., ECF No. 83 at 87.)

The Government recommended a 150-month sentence. (Sentencing Tr., ECF No. 83 at 88.) Petitioner requested a variance to 70 months. (Sentencing Tr., ECF No. 83 at 92.) Petitioner's counsel asked the Court to consider, among other things, Petitioner's: (1) drug addiction following

---

[9] The Court added, however, that it would consider the underlying facts of the state court operating-after-suspension conviction in the federal sentencing, including that Petitioner committed the offense; that Petitioner failed to comply with the deferred disposition contract; that the state court revoked the deferred disposition and imposed a six-month sentence that Petitioner served; that the state court permitted Petitioner to withdraw the guilty plea; and that Petitioner informed the state court that it was likely that he would enter a guilty plea again shortly. (Sentencing Tr., ECF No. 82 at 27-28.)

an injury and a legal prescription for oxycodone; (2) willingness to cooperate with the Government by giving statements before he was indicted; (3) plea agreement that included a waiver of his right to appeal a sentence of 120 months or less; (4) family support; and (5) efforts at rehabilitation. (Sentencing Tr., ECF No. 83 at 92-96.)  In Petitioner's allocution, he told the Court, among other things, (1) why he was out of state for work; (2) that his two statements to law enforcement were exaggerated because he wanted his oxycodone supplier "put away" to protect Petitioner's daughter from buying drugs from him; and (3) that he bought and sold less than ten pills each day. (Sentencing Tr., ECF No. 83 at 104-06.)

   The Court rejected any downward departure for (1) physical condition, drug or alcohol dependence, pursuant to section 5H1.4 of the guidelines; (2) family ties and responsibilities, pursuant to section 5H1.6; or (3) voluntary disclosure of the offenses, pursuant to section 5K2.16. (Sentencing Tr., ECF No. 83 at 109-10.)  The Court then took into account the sentencing factors set forth in 18 U.S.C. § 3553(a).  (Sentencing Tr., ECF No. 83 at 110.)  The Court stated: "Along with his addiction . . . and this offense, the most striking and unusual thing about the defendant is his extensive criminal history.  The defendant has 15 separate criminal convictions."  (Sentencing Tr., ECF No. 83 at 112.)  The Court noted that many of the convictions "reflect an almost mindless and reckless determination to do whatever the defendant wanted to do regardless of the provisions of the law that the rest of us have to follow."  (Sentencing Tr., ECF No. 83 at 113.)  The Court found that Petitioner's criminal conduct was not explained by his drug addiction, and it also noted that he failed to express any remorse.  (Sentencing Tr., ECF No. 83 at 115, 118-19.)

   The Court sentenced Petitioner to 108 months of imprisonment on each of the charges, with the sentences to be served concurrently, followed by concurrent terms of three years of supervised release on each of the charges.  (Sentencing Tr., ECF No. 83 at 121; Judgment, ECF

No. 74 at 2-3.) The Court explained to Petitioner that because the sentence was less than 120 months, in accordance with the plea agreement, Petitioner waived his right to appeal the conviction, the guilty plea, or the sentence. (Sentencing Tr., ECF No. 83 at 123-24.) The Court explained Petitioner's right to appeal, including that although the waiver of the right to appeal is usually upheld as a matter of law, if Petitioner believed the plea agreement was unenforceable, he must appeal within fourteen days. (Sentencing Tr., ECF No. 83 at 124.)

Petitioner filed a timely notice of appeal from the drug conviction, *United States v. Bowden*, No. 12-2006 (1st Cir.) (ECF No. 76), but he did not appeal from the firearms conviction. He was represented by different counsel on appeal. Petitioner requested an extension to file the brief, accompanied by appellate counsel's affidavit explaining that he had quickly read the transcripts, researched the issues, and given Petitioner his impressions about how best to proceed. (Appellate docket entry 1/22/2013.) In support of the requested extension, counsel explained that Petitioner was "actively engaged in all aspects of the appellate process," and that Petitioner had asked counsel to review additional materials. (*Id.*) Counsel later moved to withdraw, representing that he had engaged in "five lengthy phone conversations with [Petitioner]" and that they were "unable to agree about how to proceed with his case." (*Id.*, docket entry 2/26/2013.) Counsel stated that he believed that communications had broken down and that counsel could no longer provide Petitioner with "effective, conflict-free assistance of counsel." (*Id.*) The Court granted Petitioner's motion to extend the time to file the brief, but denied counsel's motion to withdraw. (*Id.* docket entries 2/26/2013, 3/06/2013.)

Petitioner subsequently moved for a voluntary dismissal of the appeal. (*Id.*, docket entry 4/1/2013.) Petitioner's accompanying affidavit explained that "[a]fter extensive conversations" with counsel, Petitioner believed that it was in his best interest to request dismissal and instead try

to find counsel to represent him in a 28 U.S.C. § 2255 petition based on a claim of ineffective assistance of counsel. (*Id.*) Petitioner also stated: "Although I have made this decision in consultation with [counsel], and although he has presented his position to me on the best way to proceed, he has stressed that the decision is mine alone to make." (*Id.*) The First Circuit ordered a voluntary dismissal pursuant to Fed. R. App. P. 42(b). (*Id.*, docket entry 4/30/2013.)

Petitioner filed his section 2255 motion in August 2013, in which motion he set forth fourteen numbered arguments. (Motion at 3-7.) In his motion, he requested an extension of 90 days to file a memorandum of law. (Motion at 1.) The Court granted the request for an extension of time, but it added that "nothing in this order extends any applicable statute of limitations and the supplementation is certainly limited to the various ineffective assistance claims already asserted and is not for the purpose of adding new claims." (Order, ECF No. 89.) Petitioner filed a supplemental memorandum in November 2013. (Supplemental Memorandum, ECF No. 94.) The Government acknowledges that Petitioner's section 2255 motion and supplemental memorandum were filed timely, but argues that all of the claims are meritless. (Response at 28.) In addition, the Government argues that several of the claims included in Petitioner's supplemental memorandum are new claims in violation of the Court's order. (Response at 28-29.)

## II.  DISCUSSION

### A.  Standard of review

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). Here,

given that Petitioner alleges ineffective assistance of counsel, and given that Petitioner's right to counsel is guaranteed by the Sixth Amendment, Petitioner is arguing that the sentence was imposed in violation of "the Constitution or laws of the United States."

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A habeas petition is not a substitute for an appeal. *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Id.* at 127-28. An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates that counsel's representation fell below an objective standard of reasonableness and prejudiced the petitioner's defense. *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

To succeed on a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012)

(citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests.  *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).  A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim.  *Strickland*, 466 U.S. at 697.

As for the "cause" test, the court must be "'fairly tolerant'" of counsel's performance because the Constitution does not guarantee a perfect defense.  *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)).  The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'"  *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).  "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'"  *Id.* (quoting *Strickland*, 446 U.S. at 689).  The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'"  *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).  In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or

inherently incredible.'" *Owens*, 483 F.3d at 56 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)).  Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'"  *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

### B.  Grounds Asserted and Analysis

### 1.  Ineffective assistance of counsel for failure to investigate Petitioner's criminal record and drug quantity (Grounds One and Fourteen)

In Ground One, Petitioner claims that counsel failed to investigate Petitioner's criminal record and failed to verify the drug quantity before advising Petitioner to plead guilty.  (Motion at 3.)  Petitioner's supplemental memorandum alleges that counsel did not investigate because counsel advised him to plead guilty on the same day that counsel was appointed to represent Petitioner.  (Supplemental Memorandum at 3.)  In Ground Fourteen, Petitioner claims that appellate counsel was constitutionally ineffective for failing to appeal on the basis that his prior counsel did not investigate Petitioner's criminal record.  (Motion at 7.)

Petitioner's allegations that counsel failed to investigate the drug quantity or his criminal record before the plea agreement are not supported by the record.  Petitioner's drug quantity and the defendant's criminal history were addressed in detail at the sentencing stage rather than at the Rule 11 hearing.  However, during the plea hearing, the Court engaged in a colloquy with Petitioner, and one of the topics about which the Court inquired was Petitioner's general understanding of the sentencing process.  Specifically, the Court asked Petitioner whether he had consulted with counsel about how the sentencing guidelines may affect his sentence.  (Fed. R. Crim. P. 11 (Rule 11) Tr., ECF No. 81 at 27-28.)  In response to the Court's question, "Have you and [counsel] talked about how the sentencing commission guidelines may affect your sentence?"

Petitioner replied, "Yes, we've talked about it." (*Id.* at 28.)  The Court explained that it could not determine the advisory guideline sentence until after it had obtained the probation office's presentence investigation report, and that if the Court imposed a sentence that was more severe than that in the applicable sentencing guideline, Petitioner would not then be permitted to withdraw his guilty plea.  (*Id.*)  At the conclusion of the Court's colloquy, the Court found that Petitioner had voluntarily and knowingly tendered a plea of guilty to the indictment and the information.  (*Id.* at 30.)  The Court accepted the guilty pleas and ordered the preparation of the customary presentence investigation report.  (*Id.*)  Given that Petitioner told the Court that counsel had discussed the sentencing guidelines with Petitioner, and given that the guidelines focus on drug quantity and criminal history, the Court can reasonably infer that counsel discussed with him both the drug quantity and Petitioner's criminal history in advance of the plea hearing.

As Petitioner asserts, with respect to the firearms charge, counsel was appointed on December 28, 2011, which was the same date on which Petitioner made his initial appearance, waived indictment, and entered a guilty plea on the firearms charge.  He also changed his plea to guilty on the drug trafficking charge.  Petitioner's contention that counsel's investigatory efforts began on December 28, 2011, however, is not accurate.  Counsel was first appointed on August 8, 2011, when Petitioner made his initial appearance following his arrest on the drug charge.  (ECF No. 9.)  On August 25, 2011, counsel filed a motion requesting authorization to spend up to $1,200 to hire an investigator.  (ECF No. 19.)  Petitioner entered a plea of not guilty to the drug charge at his arraignment on August 30, 2011.  (ECF No. 21.)  Between the time counsel was appointed to represent Petitioner on the drug charge on August 8, 2011, and the December 19, 2011, filing of the plea agreement, counsel filed three motions to continue the trial so that he would have sufficient time to review discovery (ECF No. 24), discuss matters with the Government (ECF No. 27), and

negotiate a plea agreement (ECF No. 31). Petitioner, therefore, did not enter a plea of guilty on both charges until more than four months after his initial appearance on the drug charge. Because Petitioner cites the date of the plea as the basis for his contention that his counsel failed to investigate the matter, and because Petitioner fails to point to any other bases in support of his contention, Petitioner's claim is unsupported by the record. Accordingly, Petitioner's appellate counsel did not err by not including the failure to investigate as an argument on appeal. In short, neither trial counsel nor appellate counsel's performance was deficient, and Petitioner was not prejudiced with respect to the plea. *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.[10]

### 2. Promise of 40-70 month range for the prison term (Ground Two)

Petitioner alleges that counsel promised him that the maximum sentence would be within a range of 40-70 months of imprisonment, and that counsel told him that this was true even though the plea agreement stated that the drug conviction carried a maximum prison term of 20 years and that the firearms conviction carried a maximum term of 10 years. (Motion at 3.)

The undisputed record reflects otherwise. The plea agreement states: "The parties agree and understand that the Court has the discretion to impose any lawful sentence." (Plea Agreement, ECF No. 35 at 3.) At the plea hearing, the Court pointed out this portion of the plea agreement to Petitioner and reiterated that the authority to determine the appropriate sentence rests with the Court, not with the Government or Petitioner's counsel. (Rule 11 Tr., ECF No. 81 at 25-26.) The

---

[10] Petitioner cites to *United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001), but that case is not applicable. In *Teeter*, which was decided on a sentencing appeal, the First Circuit held that the advance waiver of appellate rights at issue would not be given effect because, at the change-of-plea hearing, the Court did not direct the defendant's attention to the appeal waiver provision of the plea agreement or discuss it with her, and the Court subsequently asked the defendant, near the end of the plea colloquy, whether she understood that she did have the right to appeal the sentence. *Id.* at 26-27. Petitioner's case is entirely different in that, during the plea colloquy, the Court called Petitioner's attention to the appeal waiver provision of the plea agreement, discussed that provision with Petitioner, asked Petitioner whether he understood that he would not have the right to appeal the guilty plea, the conviction, or the sentence. (Rule 11 Tr., ECF No. 81 at 20, 26-27.) Petitioner confirmed that he understood the rights that he was waiving, and the Court found that Petitioner voluntarily and knowingly tendered his guilty pleas. (*Id.* at 20, 26-27, 30.)

Court asked Petitioner: "Aside from the written plea agreements, has anyone made any promises to you, Mr. Bowden, in an effort to get you to plead guilty?" to which Petitioner replied, "No, sir." (*Id.* at 28-29.)  The Court asked the question again, and Petitioner again stated that there had been "[n]o promises."  (*Id.* at 29.)

> The First Circuit has held that
>
> the presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified.

*United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984).  Petitioner has not provided any credible, valid reason why a departure from his earlier statements is justified.[11]  Petitioner thus has failed to show either deficient performance by counsel or prejudice to Petitioner.  *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.

### 3.  Failure to move to suppress statements (Grounds Three and Eight)

In Ground Three, Petitioner claims that counsel failed to move to suppress two statements that Petitioner made to law enforcement officers.  Petitioner maintains that the statements, in which, Petitioner contends, he provided inaccurate and overstated information regarding the drug amounts, were obtained in violation of Petitioner's *Miranda* rights.[12]  He alleges that he was not

---

[11] Petitioner also cites *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), but neither of those cases is applicable.  In *Frye*, the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 132 S. Ct. at 1408.  Here, Petitioner does not allege that counsel failed to communicate a plea offer. In *Lafler*, a "favorable plea offer was reported to the client but, on advice of counsel, was rejected," and "[a]fter a guilty verdict, the defendant received a sentence harsher than that offered in the rejected plea bargain." 132 S. Ct. at 1383.  The Court held that both prongs of *Strickland* had been satisfied, and it remanded the matter for the district court to order the state to reoffer the plea agreement.  *Id.* at 1391.  *Lafler* is inapplicable here because Petitioner accepted the plea agreement.

[12] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.")

given a *Miranda* warning, and law enforcement agents threatened that if he did not talk with them, he would get a substantial prison sentence. (Motion at 3.)

Based on Petitioner's allegations and the record, a motion to suppress would have been futile. That is, neither of Petitioner's statements was obtained in violation of his *Miranda* rights. *Miranda* applies only when a defendant is in custody. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Petitioner was not in custody during either of the interviews. The record does not reflect, and Petitioner has not alleged, any facts that suggest that the April 7, 2010, interview, which took place in the agent's vehicle and did not culminate in an arrest, constitutes a custodial interrogation. In addition, the May 26, 2011, interview, which occurred in Petitioner's home after he told agents, "Come on in," contains no indicia of a custodial interrogation. [13] *See United States v. Campbell*, 741 F.3d 251, 266-68 (1st Cir. 2013) (discussing the factors used to determine whether traffic stops are custodial, and noting that they include whether the suspect was in familiar or neutral surroundings, the number of officers present, the degree of physical restraint placed on the suspect, and the duration and character of the interrogation). Furthermore, Petitioner asserted at sentencing that he made the two statements "willingly" to the agents. (Sentencing Tr., ECF No. 83 at 105.)

Because the record contains no evidence upon which one could reasonably conclude that Petitioner was in custody when he was questioned by law enforcement, or that Plaintiff provided the statements involuntarily, a motion to suppress would have been futile. Counsel, therefore, had no obligation to pursue such a motion. *See Tse v. United States*, 290 F.3d 462, 465 (2002) ("Since [petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective

---

[13] The Government attached to its response the transcripts of the two interviews; it had introduced these transcripts at the sentencing hearing. (Transcripts, ECF No. 104-1; Sentencing Tr., ECF No. 83 at 34.) Information about the location and duration of each interview appears at the top of the first page of each transcript; this information appears to be undisputed.

assistance in failing to press the claims at trial or on appeal must also fail.")  Petitioner thus has failed to show either deficient performance by counsel or prejudice to Petitioner.  *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.

### 4. Failure to move for production of information regarding drug quantity (Grounds Four and Seven)

In Ground Four, Petitioner alleges that counsel obtained, but failed to offer at sentencing, a report that on July 31, 2009, while Eddie Witham was in jail, Mr. Witham told his father, Michael Witham, Sr., that Petitioner would come by to purchase five pills.  (Motion at 3.)  Petitioner alleges that despite this information, Petitioner was charged with twice that amount. (Motion at 3.)  He also alleges that additional reports include amounts much less than the ten pills each day that Petitioner admitted to law enforcement.  Petitioner maintains that counsel failed to move for discovery of all *Brady/Giglio* material.[14]  (Motion at 3-4.)  In Ground Seven, Petitioner appears to make less specific, but similar allegations.  (Motion at 5.)

Through the sentencing memorandum and Petitioner's Exhibit 16, which was admitted at sentencing, Petitioner's counsel in fact argued for an overall lower drug quantity.  (Sentencing Memorandum, ECF No. 57 at 1-3; Exh. 16, ECF No. 104-3 at 1-7; Sentencing Tr., ECF No. 83 at 67.)  Ultimately, however, the Court, which explained in detail the bases of its conclusion, based its drug quantity finding on Petitioner's statement that he possessed ten pills each day.  The record contains no evidence to suggest that the information about the transactions with Mr. Witham (i.e., the fact that Petitioner purchased five pills each day) would have convinced the Court to alter its analysis.  Indeed, the mere fact that Petitioner obtained five pills from Mr. Witham in no way

---

[14] Petitioner cites *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which holds that the prosecution may not suppress evidence that is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also Giglio v. United States*, 405 U.S. 150, 154 (1972) (extending the *Brady* holding to evidence that could impeach the credibility of a key government witness).

supports the conclusion that Petitioner only had five pills each day. Additionally, Petitioner has provided no specific information about the content of the alleged "reports" to support his contention that these reports would have produced a different result even if they exist.

In essence, Petitioner contends that his counsel's performance was deficient because counsel failed to persuade the Court that a lower drug amount was involved. The fact that the Court did not find Petitioner's argument persuasive does not render counsel's performance deficient. *See Moreno-Espada*, 666 F.3d at 65.[15]

### 5. Failure to obtain information about and obtain immunity for Michael Weston (Ground Five)

Petitioner alleges that because during the first year at issue, he consumed all of the pills and did not sell any, his counsel was ineffective for failing to offer evidence of recorded telephone calls by Michael Weston to Petitioner from jail to corroborate Petitioner's allegation. (Motion at 4.) Petitioner also argues that counsel was ineffective for failing "to move for partial immunity" for Weston so that Weston could testify about drug amounts but not about "arson and other crimes." (Motion at 4.)

Petitioner's counsel subpoenaed Weston to testify, but Weston told his own counsel that he would invoke his Fifth Amendment privilege against self-incrimination and would not testify. (Sentencing Tr., ECF No. 82 at 30, 36-37.) Petitioner's counsel does not have the authority to grant immunity, and there is not a process by which counsel can "move" for immunity. A grant of immunity is given by the Government, not by the Court or defense counsel. *See United States v. Mackey*, 117 F. 3d 24, 28 (1st Cir. 1997) (noting that "in general, courts have no power to compel

---

[15] Petitioner also alleges that he was actually innocent. (Motion at 3, 5.) "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The Court found sufficient evidence, based on Petitioner's own statements, that he possessed ten pills each day. (Sentencing Tr., ECF No. 83 at 84.) Petitioner has not satisfied his burden to demonstrate that an evidentiary hearing is warranted based on the allegations set forth in his section 2255 motion. *See Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003).

immunity in the face of a good faith refusal by the prosecutor"); *United States v. Quinn*, 728 F.3d 243, 247 (3d Cir. 2013) ("Immunity is a statutory creation . . . . The decision to immunize a witness to obtain his testimony is a core prosecutorial function, as immunizing necessarily involves weighing the public's need for testimony against the risk that immunity will inhibit later prosecution of criminal wrongdoing.").

Even without the immunity, Petitioner's counsel was able to present information from Weston. In lieu of Weston's testimony, Petitioner offered the testimony of a private investigator who interviewed Weston about drug amounts. (Sentencing Tr., ECF No. 83 at 37-40.) The private investigator testified that Weston told him that Petitioner obtained ten pills each week, mostly for personal use. (*Id.* at 38-40.)

Insofar as the grant of immunity is not within his counsel's authority or control, and given that his counsel actually presented information from Weston, Petitioner has failed to show either deficient performance by counsel or prejudice to Petitioner. *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.

### 6. Failure to obtain evidence from Michael Witham, Sr., regarding drug quantity (Grounds Six and Nine)

Petitioner claims ineffective assistance of counsel for counsel's failure to obtain more discovery about Michael Witham, Sr., particularly that Witham was an informant who "would have told police and federal agents the exact amount of drugs that [Petitioner] was purchasing . . . ." (Motion at 4.) Petitioner argues that Mr. Witham would have provided information that would have established an "exact" drug quantity for sentencing, would have contradicted Petitioner's higher estimates of the drug quantity, and would have resulted in lowering the drug quantity for which Petitioner was held responsible. (Motion at 4-5.) In addition, Petitioner argues that he was prejudiced because counsel failed to pursue information about a statement that Michael Witham,

Sr., made to the effect that he had a deal with the Government. (Motion at 4-5.) Specifically, Petitioner argues that to the extent that he received a more stringent sentence for not cooperating in the Government's efforts to implicate Michael Witham, Sr., the sentence was unfair because Michael Witham, Sr., had already been implicated and was cooperating. (Motion at 5.) In Ground Nine, Petitioner reiterates the claim that counsel was ineffective for failing to move for discovery and *Brady* material regarding both Eddie Witham and Michael Witham, Sr. (Motion at 5-6.)

Petitioner's argument rests on the assumption that Michael Witham, Sr., was an informant; this assumption, however, is not supported in the record. The Government represents that Michael Witham and Eddie Witham remained at large at the time of Petitioner's sentencing, and remained unindicted criminal co-conspirators. (Response at 38.) Under the circumstances, any suggestion that the Withams would have implicated themselves in an oxycodone conspiracy is speculative and unrealistic. (*Id.*) More importantly, contrary to Petitioner's argument, Petitioner did not receive a harsher sentence because he failed to cooperate in a case against the Withams; the lack of cooperation was not listed among the factors the Court considered in imposing the sentence against Petitioner. (*Id.*) Because the record lacks any evidence that Michael Witham was an informant, and because the Court did not cite Petitioner's lack of cooperation in the prosecution of the Withams as a sentencing factor, Petitioner has failed to show either deficient performance by counsel or prejudice to Petitioner. *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.

### 7. **Failure to present a clearly stated and supported exhibit on drug quantity (Ground Ten)**

In Ground Ten, Petitioner alleges that counsel failed to present accurate and pertinent drug quantity information in writing before sentencing. He contends that instead, counsel presented Exhibit 16 (ECF No. 104-3), which he argues incorrectly states that Petitioner sold 30-mg and 80-mg pills for one year, from March 2009 to March 2010. (Motion at 6.) Petitioner maintains that

he did not actually start to sell until the end of that period, that he sold oxycodone only "because he ran out of money and property to sell," and that he sold only enough to support his own addiction. (*Id.*) In support of this argument, Petitioner reiterates the same arguments that he previously asserted - that counsel should have sought the testimony of Eddie Witham, Mike Witham, Sr., and Michael Weston, all of whom would have attested to lower quantities than the amount to which Petitioner admitted in his two interviews with law enforcement.

As explained above, Petitioner's complaint about counsel's performance is not supported by the record. Counsel submitted drug quantity information on Petitioner's behalf in the objections to the initial presentencing investigation report, in the sentencing memorandum and at the sentencing hearing. (Sentencing Memorandum, ECF No. 57 at 3; Exh. 16, ECF No. 104-3; Sentencing Tr., ECF No. 83 at 67.) For the reasons discussed in connection with Grounds Five, Six, and Nine, Petitioner has failed to show either deficient performance by counsel or prejudice to Petitioner. *See Strickland*, 466 U.S. at 688; *Turner*, 699 F.3d at 584.

8. **Failure to obtain discovery regarding Andrew Robinson to reduce the drug quantity (Ground Eleven)**

In Ground Eleven, Petitioner claims ineffective assistance of counsel for failure to obtain discovery regarding Andrew Robinson. He alleges that the evidence would have supported a reduced drug quantity attributable to Petitioner. Although Petitioner does not state Robinson's role, the Government represents that Robinson was a customer of Petitioner's. (Response at 41.) The Court did take Robinson's testimony into account, noting that Robinson testified that he bought oxycodone pills twice each week from Petitioner starting in late July 2009 when his prior supplier, Eddie Witham, went to jail. (Sentencing Tr., ECF No. 83 at 82.) Petitioner's claim that counsel failed to move for more *Brady* material about Robinson is undeveloped and, therefore, may be considered waived. *See David*, 134 F.3d at 478 ("To progress to an evidentiary hearing, a

habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings.").

### 9. Failure to challenge the application of the guidelines on grounds that Petitioner committed the crimes solely because he was a drug addict (Ground Twelve)

Petitioner claims ineffective assistance of counsel for failure to challenge his criminal history points and his criminal record as set forth in the presentence investigation report. (Motion at 7.) Petitioner contends that his entire criminal history occurred while he was addicted to drugs. (*Id.*) Contrary to Petitioner's contentions, counsel did argue at the sentencing hearing that Petitioner's criminal activity likely would not have occurred were it not for Petitioner's drug addiction. (Sentencing Tr., ECF No. 83 at 95.) However, the Court reviewed Petitioner's criminal history and found that it was not explained by his drug addiction. (Sentencing Tr., ECF No. 83 at 114-15.) Counsel cannot be found constitutionally deficient for making an argument that the Court ultimately found unpersuasive. *See Moreno-Espada*, 666 F.3d at 65.

### 10. Failure to advise Petitioner not to waive the indictment on the firearms charge (Ground Thirteen)

Petitioner claims ineffective assistance of counsel for counsel advising him to waive his right to an indictment on the firearms charge. (Motion at 7.) Petitioner argues that he was not an unlawful user of drugs at the time because he had not yet been convicted of the drug charge, and he was not guilty of the firearms charge because Michael Witham Jr., the person to whom he sold the firearms, was a licensed dealer. (Motion at 7.) Petitioner's counsel argued that the enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) should not apply because Petitioner sold to a licensed firearms dealer. The Court considered the facts and Petitioner's argument in detail, but

concluded that "the defendant used the firearms as collateral to obtain drugs." On that basis, the Court applied the firearms enhancement. (Sentencing Tr., ECF No. 82 at 6, 9-21.)[16]

Petitioner's argument suggests that counsel should have advised against pleading to the charge because he was not guilty under the applicable statutes. Petitioner's argument that he was not in violation of the firearms statute, 18 U.S.C. § 922(g)(3), because he had not been convicted of unlawful drug use, misconstrues the firearms statute. Unlawful drug use or a drug addiction is an element of the firearms crime, but there need not have been a prior drug conviction. Section 922(g)(3) states: "It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to . . . possess in or affecting commerce, any firearm or ammunition." In the Rule 11 hearing, Petitioner admitted the accuracy of the amended prosecution version, which alleged that Petitioner bought a shotgun and pawned it to another person at a time when Petitioner was an unlawful user of oxycodone, and that Petitioner pawned the gun to support his drug addiction. (Rule 11 Tr., ECF No. 81 at 21-23; Amended Prosecution Version, ECF No. 38 at 1.) Plaintiff's contention, therefore, that his counsel's performance was constitutionally deficient is without merit and unsupported on the record.

---

[16] Petitioner's argument that he was not in violation of the firearms statute, 18 U.S.C. § 922(g)(3), because he had not been convicted of unlawful drug use, misconstrues the firearms statute. Unlawful drug use or a drug addiction is an element of the firearms crime, but there need not have been a prior drug conviction. Section 922(g)(3) states: "It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to . . . possess in or affecting commerce, any firearm or ammunition." In the Rule 11 hearing, Petitioner admitted the accuracy of the amended prosecution version, which alleged that Petitioner bought a shotgun and pawned it to another person at a time when Petitioner was an unlawful user of oxycodone, and that Petitioner pawned the gun to support his drug addiction. (Rule 11 Tr., ECF No. 81 at 21-23; Amended Prosecution Version, ECF No. 38 at 1.)

### 11. Petitioner's new claims

Despite the Court's admonition that Petitioner was not to add new claims in his supplemental memorandum, Petitioner added three new claims. (Order, ECF No. 89; Supplemental Memorandum, ECF No. 94.) Petitioner asserted (1) that counsel failed to move to dismiss the indictment and the information based on Speedy Trial Act violations;[17] (2) that counsel failed to move to dismiss the indictment on the basis that it did not name the co-conspirators; and (3) that counsel failed to move to dismiss the indictment because all of the co-conspirators were government informants. (Supplemental Memorandum at 3-6.)

Preliminarily, the claims are subject to dismissal because they are new claims, brought in violation of the Court's order that permitted the supplemental memorandum but disallowed new claims, i.e., claims asserted for the first time in the supplemental memorandum. (Order, ECF No. 89.) Furthermore, none of the new claims has any merit.

First, Petitioner waived any claim under the Speedy Trial Act when he entered an unconditional guilty plea. *See United States v. Gonzalez-Arimont*, 268 F.3d 8, 12 (1st Cir. 2001) (holding that "a claim under the Speedy Trial Act is a nonjurisdictional defense that is waived with an unconditional guilty plea").

Petitioner's claim that the indictment was insufficient because it did not name the co-conspirators is procedurally defaulted as a stand-alone claim, and it is without merit as a claim based on counsel's failure to move to dismiss the indictment. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."

---

[17] The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), provides in pertinent part: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) (quotation marks omitted). "[T]he government is not required to furnish the name[s] of all other co-conspirators" in a bill of particulars when the co-conspirators were unnamed in the indictment. *United States v. Vassar*, 346 F. App'x 17, 22 (6th Cir. 2009) (quotation marks omitted). Finally, Petitioner's claim that the indictment was defective because all of the co-conspirators were government informers has no merit because it is unsupported by the record. As discussed above, Eddie Witham and Michael Witham, Sr., were criminal co-conspirators, not Government agents or informants. Simply stated, the indictment was sufficient and not subject to dismissal.

### III.  CONCLUSION

Based on the foregoing analysis, the recommendation is (1) that the Court grant the Government's motion for summary dismissal, (2) that the Court dismiss Petitioner's section 2255 motion, and (3) that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of September, 2014.